## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

### Case No.

 **WURTH USA, INC.**,

      Plaintiff,

v.

**MICHELLE THOMPSON; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; and DOE ENTITIES 1-10**,

      Defendants.

_____/

### VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff Wurth USA, Inc. ("Wurth"), by its undersigned counsel, hereby sues Defendant Michelle Thompson ("Thompson") and alleges:

### PRELIMINARY STATEMENT

Defendant Thompson is a former employee of Wurth who violated her valid and enforceable Wurth Employment Agreement by commencing employment with Winzer Corporation ("Winzer"), Wurth's direct competitor, and selling Winzer's products to her former Wurth customers, within narrow-restricted temporal and geographic boundaries, located in the same territory as her former Wurth assigned territories shortly after her separation from Wurth. Winzer, who is not named as a defendant at this early juncture, for its part, is aware of Thompson's iron-clad

1

Employment Agreement and more specifically, her non-compete agreement, but has turned a blind eye in order to obtain an unfair competitive advantage and access to Thompson's knowledge of Wurth's confidential and trade secret information.

Thompson continues to use Wurth's confidential and proprietary customer information in violation of both statute and the Wurth Employment Agreement. Wurth has been forced to file this instant action to protect its confidential and proprietary information, and to enforce its valid and enforceable Employment Agreement that Thompson signed but refuses to honor.

## PARTIES

1.      Plaintiff Wurth is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business located at 93 Grant Street, Ramsey, New Jersey 07446.

2.      Defendant Thompson is an adult individual and was formerly employed by Plaintiff.  Upon information and belief, Thompson is a resident of Florida, residing at 2641 Reagan Trail, Lake Mary, Florida 32746.

## JURISDICTION AND VENUE

3.      The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) in that there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs of suit.

4.      This Court has jurisdiction over Defendant as she resides in the State of Florida, has done business within this State and in this District, and Plaintiff's claims in this action arose out of those contacts. Additionally, Defendant knowingly and

voluntarily executed an employment agreement with Plaintiff to conduct business within this state.

5.      Venue is proper in this Court because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## FACTS

### The Business of Wurth and Winzer

6.      Established in 1969, Wurth is one of the leading suppliers in the United States, and around the world, of high-quality hardware products and services, including electrical and chemical. Specifically, Wurth specializes in the, sale, service and retail of automotive parts and chemicals, automotive hand tools, electrical supplies, cargo parts and chemicals, key machine, key blank, products. Wurth additionally has its own line of Automotive chemicals, known as the WURTH Green Line.

7.      Wurth maintains offices throughout the United States and has been expanding its presence for over 50 years.

8.      Wurth has multiple divisions within its company, including its Sales Division which is compiled of full time Sales Representatives, each assigned to a specific territory, in one or more states.

9.      Winzer, a direct competitor of Wurth, is also in the fasteners, electrical, chemical automotive, hand tool industrial supply and services industry. Winzer has its presence throughout the nation, including in Florida, Georgia, Washington D.C., and Texas. According to Winzer's website, "Winzer is your single source supplier for

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

all of your maintenance and repair supplies ." Winzer has been servicing the maintenance, repair, and operations industry since 1978. *Id.*

**Thompson's Employment at Wurth and Her Employment Agreement**

10.     Wurth hired Thompson as a Sales Representatives in Wurth's Sales Division team. In her position, Thompson was assigned to a specific territory and was responsible to solicit customers and maintain a class of accounts in her territory, pursuant to Wurth's customers' or accounts' orders for any automotive related parts, key machine related parts, industrial fasteners and industrial maintenance related products.

11.     Thompson maintained her position at Wurth for at least ten years.

12.     During that time, Thompson was exposed to, had access to, and utilized Wurth's Trade Secrets and Confidential Information such as Wurth's specialized products and equipment; identity of Customers including Customer Lists; sales pricing; specialized requirements of Wurth's customers; commission structures; Wurth's periodic financial performance; marketing, strategy, and sales reports; Wurth's software and computer programs; training materials and others. From the first date of employment through last day of employment, Thompson gained considerable knowledge and expertise due to such confidential material and training provided by Wurth.

13.     At the time of her separation, Thompson was employed by Wurth as a Sales Representative in the very original territories as initially assigned, and had built reputable steady relationships with customers.

4

14.     As a Sales Representative, Thompson worked closely with her counterparts in other regions to advance Wurth's overall business strategy.

15.     For example, Thompson and other Wurth's representatives frequently attended conference calls with their superiors in which they discussed business developments within their respective territories. These calls included Conference Calls; Strategic Account Calls, in which superiors shared confidential information and statistics about Wurth's customers in their respective regions, as well as information regarding new customers that Wurth intended to pursue.

16.     As another example, Wurth's superiors routinely shared order records, internal organizational charts, leads spreadsheets, and other confidential documents related to Wurth's business strategy and its market intelligence with their Sales Representatives. Defendant frequently attended various in-person meetings in which such information was shared and discussed.

17.     Thompson also frequently consulted with colleagues in Wurth's various locations on a less formal basis. Thompson, in fact, had spent most of her professional career with Wurth.

18.     As a consequence, Thompson was intimately familiar with Wurth's business strategy within her assigned territories, including but not limited to Wurth's customers and customer preferences and relationships; agreements and pricing; business initiatives; competitive advantages and disadvantages; and approaches to new markets and customers.

19.     Incident to and in consideration of her employment with Wurth, Thompson entered into an employment agreement with Wurth which is attached hereto as **Exhibit A** ("Thompson Employment Agreement").

20.     By entering into the Employment Agreement, Thompson agreed not to disclose or misuse confidential Wurth information. Specifically, she promised that she would not, at any time during or following her employment: …remove from Company's office any of the Company's Confidential Information, or any copies of such documents or information, without the written permission of Company's president. *See* **Exh. A** § 5(a).

21.     Further, Thompson agreed not to use: …such confidential information for any non-Company purposes whatsoever or to divulge such information to any person other than Company or persons to whom Company has given its prior written consent. *See* **Exh. A** § 5(b).

22.     In accepting her position with Wurth, Thompson specifically agreed to refrain from soliciting certain Wurth customers for a period of twelve (12) months after leaving Wurth's employ. Her Employment Agreement provides:

> For a period of twelve (12) months after this Agreement has been terminated for any reason, with or without cause, or for a period of time equal to the length of the Employee's employment with Company if such tenure is less than twelve (12) months, Employee will not directly or indirectly solicit or sell any products which are the same or similar to the Company's products to those persons, companies, firms or corporations who are or were customers of Company within the six (6) months prior to the termination of this Agreement and for whose accounts Employee was responsible while in the employ of Company. Employee agrees not to solicit such accounts on behalf of himself/herself or any other person,

firm, company, or corporation. Employee further agrees not to solicit or induce or attempt to solicit or induce employees of the Company to terminate their employment with the Company, or cause employees to take any actions that might deprive the Company of any customer or of any present or prospective opportunity.

*See* **Exh. A** § 7(a).

23.     Additionally, Thompson as a condition of and in consideration of her employment, covenanted not to compete with Wurth and other Wurth Companies within a limited geographic radius for the first year after leaving Wurth. Her Wurth Employment Agreement provides:

> For a period of twelve (12) months after this Agreement has been terminated for any reason, with or without cause, or for a period of time equal to the length of Employee's employment with Company if such tenure is less than twelve (12) months, Employee will not enter into or engage in the automotive parts business, the key machine business or key blank business, the industrial fastener and industrial maintenance products business, or any branch thereof as an individual or his/her own account or as a partner of joint venture, or as an employee, agent, independent contractor, or salesman for any person, firm association or corporation, or as an officer or director of a corporation which competes with the business of this Company within any territory to which Employee was assigned within six (6) months prior to the termination of this Agreement.

*See* **Exh. A** § 7(b).

24.     The reasonableness of the geographic and temporal scope of the non-competition and non-solicitation provisions in the Wurth Employment Agreement has been accepted and the restrictions enforced by state and federal courts.

25.     Thompson also agreed to the reasonableness of the geographic and temporal scope of the non-competition and non-solicitation provisions which provides:

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

> The parties have attempted to limit Employee's right to compete only to the extent necessary to protect Company from unfair competition. The parties recognize, however, that reasonable people may differ in making such a determination. Consequently, the parties hereby agree that, if the scope of enforceability of the restrictive covenant is in any way disputed at any time, a court or other trier of fact may modify and enforce the covenant to the extent that it believes to be reasonable under the circumstances existing at that time.

*See* **Exh. A** § 7(c).

26.     Thompson initialed each page of her Wurth Employment Agreement.

27.     Thompson also signed her Wurth Employment Agreement.

28.     Furthermore, Thompson expressly agreed that in the event of a breach in the Wurth Employment Agreement pursuant to the misuse of trade secrets, confidential information, unauthorized employee communication, misuse of company name and non-disparagement and violation of the restrictive covenants, such breach will irreparably and continually damage Wurth, for which money damages may not be adequate. Thompson agreed that:

> In the event that he/she breaches or threatens to breach any of these covenants, Company shall be entitled to (1) a preliminary or permanent injunction without bond in order to prevent the continuation of such harm; (2) the courts extension of the duration of the restrictive covenants for the period in which Employee was found to be in breach of those covenants; and (3) money damages for prior breaches insofar as they can be determined. Nothing in this Agreement, however, shall be construed to prohibit Company from also pursuing any other remedy, the parties having agreed that all remedies shall be cumulative. As a portion of the above referenced money damages for the period of time during which Employee violates these covenants, Company shall be entitled to recover the amount of fees, compensation, or other remuneration earned by Employee as a result of any such breach.

*See* **Exh. A** § 8(a)-(b).

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

**<u>Thompson's Employment History at Wurth</u>**

29.     Wurth hired Defendant Thompson on November 5, 2009, as a Sales Representative in Wurth's Sales Division team. **Exh. A**. In that position, Defendant Thompson was assigned to the Seminole County territory located in Florida.

30.     Over the length of her employment with Wurth, Defendant Thompson built many relationships with customers and conquered massive expertise in the field and knowledge of her territories.

31.     After nearly 12 years at Wurth, Defendant Thompson left Wurth and became an employee of Winzer, a direct competitor of Wurth. Not only did Defendant Thompson become an employee of a direct competitor, she also remained in the very same territories in violation of her Wurth Employment Agreement. *See* **Exh. A** § 7(b).

32.     During the onset of her new employment with Winzer, Defendant Thompson solicited current and former customers of Wurth and successfully sold to them various supplies for the benefit of herself and Winzer, in direct violation of her Wurth Employment Agreement. *See* **Exh. A** § 7(a).

33.     Wurth has in fact been damaged at minimum, in an amount exceeding a hundred thousand dollars by Thompson.

**<u>Thompson's Development of Wurth's Goodwill and Customer Relationships, and Her Access to Wurth's Trade Secrets, Including Its Confidential Customer List</u>**

34.     In order to perform their duties, Thompson received training by Wurth and was given access to, and did in fact access, Wurth's confidential and proprietary

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

information. Thompson also became intimately involved with many of Wurth's customers, accounts, and projects.

35.    Specifically, Thompson had access to and contributed to, the substantial customer list which Wurth has developed and which contains critical information for hundreds of prospective and actual customers in the Florida, Georgia, Washington D.C. and Texas regions (i.e., customers seeking or potentially seeking, among others, industrial automotive supplies) (the "Wurth Customer List"). The Wurth Customer List, which has been developed over many years and at great expense, contains confidential and proprietary business information, such as but not limited to:

A.    The names, addresses, and telephone numbers of each Wurth customer/account and prospective customer/account;

B.    The name, title, telephone number, email address of the contact person for each Wurth customer/account and prospective customer/account;

C.    The name, title, address, email address, telephone number of each decision maker in every department of each Wurth customer/account and many prospective customers/accounts;

D.    The particular requirements and preferences of each customer/account and many prospective customers/accounts;

E.    The pay rates or fees negotiated with each customer/account;

F.    Credit information for each customer/account and many prospective customers/accounts; and

G.    Other information pertinent to serving each customer/account and prospective customer/account.

36.    All Wurth Sales Representatives, including Thompson, had access to and utilized the Wurth Customer List.

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

37.     Additionally, over the years, Wurth has developed business relationships and goodwill with numerous Customers and accounts, and Wurth's Sales Representatives have access to those relationships all throughout the United States.

38.     Indeed, Wurth employed Thompson and compensated her specifically so that she would focus her efforts on developing those relationships, thereby contributing to the goodwill of the company.

39.     Wurth's Customer List is an extremely valuable asset and has been compiled only after spending significant time, efforts and resources. The information compiled in this list is generally not known or readily ascertainable and, as such, could easily be exploited by Wurth's competitors to allow them to gain a competitive advantage over Wurth.

40.     Thompson did not bring any customer relationships or contacts to Wurth; rather, she was provided a territory with built-in customer relationships, which she was required to develop and maintain as a Wurth employee.

41.     To protect the information contained in this list, as well as Wurth's Customer relationships, Wurth has adopted company-wide written policies restricting the disclosure or use of this information other than for official company purposes, as evidenced in each of the Thompson's Employment Agreement. *See* **Exh. A** § 5(a)-(b).

42.     Additionally, Wurth requires each of its Sales Representatives to execute employment agreements and other documents with strict confidentiality provisions as a condition of employment. Further, Wurth restricts and limits who can access, use,

and print such confidential information; and requires express written authorization for any non-Company purposes. *Id.*

43.     In addition, and as described above, Defendant Thompson had access to high-level confidential information concerning Wurth's business practices and strategies throughout their territories, by virtue of her role as Sales Representative.

44.     It goes without saying, the industry of which Wurth is in, is highly competitive. Thus, the type of confidential information that Thompson continues to have is critical to Wurth's business.

45.     Also critical are customer goodwill, which Wurth pays its Sales representatives to develop on behalf of Wurth so that when customers are in need for supplies and services, customers rely on Wurth for delivery and great customer service.

46.     Wurth spends hours and hours developing these relationships, largely through the activities of its Sales Division teams. Thompson has demonstrated the value of such relationships already by, upon information and belief, actively reaching out to the customers with whom she worked with while at Wurth since separating from Wurth and beginning employment with Winzer.

47.     Thompson knew that Wurth specifically identified the information set forth above as confidential proprietary information; that such information has not been published or otherwise become a matter of public knowledge; and that she was not and continues to be obligated to use it, if at all, exclusively for the benefit of Wurth, but otherwise to keep it strictly confidential.

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

48.     Thompson knew that disclosing Wurth's trade secrets, confidential and proprietary information would operate to the detriment of Wurth and to the commercial advantage of its competitors, particularly a competitor like Winzer.

**Thompson's Separation from Wurth to Join Wurth's Direct Competitor Winzer**

49.     In 2021, Defendant Thompson separated from Wurth to join Wurth's direct competitor, Winzer. Specifically, Defendant Thompson resigned from Wurth effective March 31, 2021.

50.     Thompson began employment with Winzer shortly after her separation.

51.     Defendant Thompson was required to honor her multiple post-employment restrictive covenants. Upon new employment, one particular post-employment restrictive covenant in the Thompson Employment Agreement is to show prospective employers, Wurth's Employment Agreement. Specifically, the Employment Agreement provides: "Employee agrees to promptly furnish any new employer with a copy of this Agreement prior to commencement of employment with that employer if less than two years after the termination of Employee's employment with Wurth." *See* **Exh. A** § 11.

52.     Upon information and belief, Defendant Thompson is now employed as Winzer's Sales Representative. Her employment with Winzer as a Sales Representative violates her Wurth Employment Agreement because, inter alia, the territory to which she is assigned is within the territory of which she was assigned while employed by Wurth.

53.     Upon information and belief, Winzer is seeking to expand their nationwide presence and has directly attempted to solicit numerous Wurth employees to join its company, despite having knowledge that the employees are prohibited by post-separation restrictive covenants from joining Winzer.

54.     This is particularly evidenced by multiple Cease-and-Desist letters sent to Winzer, pointing to the various post-employment restrictive covenants pertaining to Defendant Thompson's own obligation to show her Wurth Employment Agreement to Winzer upon hiring.

55.     As Winzer's Sales Representative in her assigned territory, Defendant Thompson is in a position to utilize and capitalize her knowledge of Wurth's confidential and trade secret information regarding the Seminole County territory, which she obtained by virtue of her position as a Sales Representative for over 11 years– to unfairly compete against Wurth to its detriment and to the benefit of herself and Winzer.

56.     Immediately after Defendant Thompson gave notice of her resignation to Wurth and upon effective employment with Winzer, Defendant Thompson successfully solicited Wurth Customers and sold to same.

57.     Upon information and belief, Winzer is directly competing with Wurth in Florida, in the very same territory county which Defendant Thompson had significant insight and control over.

58.     Upon information and belief, Winzer also expected that Defendant Thompson would encourage other Wurth Sale Representatives to transition to the Winzer company, in violation of their own Wurth Employment Agreement.

59.     Upon information and belief, Winzer hired Defendant Thompson not only to have her compete with Wurth in Florida (which is, in itself, in violation of Defendant Thompsons' Wurth Employment Agreement), but also in order to utilize the Wurth goodwill, and confidential and proprietary information Thompson learned while employed by Wurth to compete against it while expanding to other locations.

60.     To date, due to Defendant Thompson's multiple violations of her post-employment restrictive covenants, Wurth has in fact been damaged at minimum, in an amount that exceeds one-hundred thousand dollars by Thompson.

## Cease-and-Desist Exchange and Thereafter

61.     On or about May 14, 2021, a Cease-and-Desist letter was sent to Defendant Thompson regarding her new Winzer employment and a reminder of her valid and enforceable restrictive covenants contained in her Wurth Employment Agreement. Such Cease-and-Desist letter requested Thompson to honor her post-employment restrictive covenants. **Exhibit B**.

62.     On or about May 19, 2021, Wurth received a response from Defendant Thompson's lawyer Christopher R. Ritz, regarding Wurth's Cease-and-Desist letter. Defendant Thompson denied all wrongdoing in such response. **Exhibit C**.

63.     On or about June 3, 2021, a Cease-and-Desist letter was sent to Winzer regarding Thompson's new employment with Winzer. The Cease-and-Desist letter

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

notified Winzer that it has learned that Thompson commenced employment with Winzer in direct violation of her post-employment restrictive covenants. In the correspondence, Wurth demanded that Winzer cease its interference with Thompson's post-employment obligations to Wurth, and demanded that Thompson abide by her Wurth Employment Agreement including Winzer's proof of receipt of Thompson's Wurth Employment Agreement. **Exhibit D**.

64. On September 1, 2021, Wurth sent a Cease-and-Desist letter was sent to Winzer regarding Thompson (and other employees) specific breaches of their Employment Agreements. **Exhibit E**.

65. On or about November 9, 2021, Wurth filed a Verified Complaint in the District of New Jersey, Civil Action No. 2:21-cv-19877 against Thompson and three other former Wurth employees who also violated their Employment Agreements with Wurth.

66. On November 15, 2021, Wurth filed an Order to Show Cause seeking temporary and permanent relief as a result of Thompson's failure to abide by her Employment Agreement.

67. Shortly thereafter, Thompson filed a motion to dismiss for lack of jurisdiction which was administratively dismissed as the parties engaged in settlement discussions from December 2021 through March 2022 to no avail.

68. Wurth voluntarily dismissed its Complaint and filed the instant lawsuit in Thompson's home state and where she continues to compete with Wurth.

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

69.     To date, Thompson is in active employment with Winzer and Winzer failed to take action or to cooperate, thereby continuing to utilize Wurth's trade secrets and confidential and propriety information through Thompson; continuing to solicit Wurth's customers and accounts through Thompson; and continuing to usurp Wurth's business opportunities with loyal customers/accounts and prospective customers/accounts through Thompson.

70.     To date, Wurth's damages arising out of Thompson's unlawful behavior are significant.

71.     Winzer directly competes with Wurth by selling and providing, "[f]rom fastener products to facility maintenance " among others, in greater Florida, Texas, Georgia, and Washington D.C. areas, the very same business in which Wurth engages and the very same territories that Wurth serves.

72.     Winzer sought Thompson for hire to capitalize on her knowledge and relationship with Wurth's Customers, and her knowledge of Wurth's confidential and proprietary information.

73.     In other words, Winzer and Thompson want to take for themselves, and profit directly from, the very goodwill that Wurth paid Thompson to develop for it.

74.     Thompson has acted for the purpose of injuring Wurth and limiting marketplace competition.

75.     Upon information and belief, Winzer hired Thompson with full knowledge that she was bound by her Wurth Employment Agreement.

76.   Winzer has continued to employ Thompson with full knowledge that she was bound by her Wurth Employment Agreement. Winzer is familiar with the terms of the Wurth Employment Agreement prohibiting Thompson from disclosing, furnishing, or using confidential Wurth information; prohibiting her from working for a competitor of Wurth located within her previously assigned territories while being employed by Wurth; prohibiting her from soliciting Wurth's customers/accounts; and prohibiting her from disclosing or using on behalf of Wurth's confidential information.

77.   In commencing employment with Winzer, Thompson violated her Wurth Employment Agreement by accepting employment with a competitor of Wurth within the prohibited temporal and geographic scope.

78.   Upon information and belief, Thompson has further violated her Wurth Employment Agreement by, among other things, soliciting Wurth customers including those with whom she worked while employed by Wurth, in an attempt to have such customers cease doing business with Wurth and enter into supply, service and maintenance orders with Winzer. To date, collectively, Wurth has endured significant and substantial damages due to Defendant's unlawful behavior.

79.   Upon information and belief Winzer requires its employees to execute employment agreements with confidentiality provisions, restrictions on future employment with competitors and prohibitions on customers/accounts that are similar to the Wurth Employment Agreement which Thompson executed.

80.   In sum, Winzer itself acknowledges that the very same customers/accounts, business systems, operations, and customer lists that Wurth is

18

GORDON REES SCULLY MANSUKHANI LLP
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

now seeking to protect constitutes confidential information and trade secrets. In its response to Wurth's Cease-and-Desist letter, Winzer acknowledged the importance of honoring post-employment restrictive covenants and noted the following:

> Winzer requires any new franchisee who is known to be subject to post-employment restrictive covenants to enter into a non-disclosure agreement ("NDA"), which requires the franchisee to represent that he or she (1) returned to their former employer all confidential and proprietary information; (2) has not and will not disclose any confidential or proprietary information to Winzer; and (3) will not be in violation of any agreement the employee has with their former employer by virtue of his or her work with Winzer.

**Exh. E**.

81.    By failing to adhere to its own policy, Winzer and Thompson's actions are intentional, willful and malicious.

82.    Thompson is causing Wurth irreparable harm and injury, including without limitation, the loss of customers; loss of employees; profits; business reputation and market share; the disclosure and misuse of trade secrets; disclosure and misuse of confidential and proprietary business information; and the loss of goodwill. These losses and injuries will continue if the Court does not enjoin Defendant's actions.

83.    Wurth has no adequate remedy at law.

## COUNT I
## BREACH OF CONTRACT/ BREACH OF EMPLOYMENT AGREEMENT

84.    Wurth incorporates and re-alleges Paragraphs 1 through 83.

85.    The Wurth Employment Agreement is a valid and enforceable contract.

86.     Defendant Thompson voluntarily entered into the Wurth Employment Agreement in consideration for her employment with Wurth and incident to that employment relationship.

87.     The post-employment restrictive covenant contained within the Wurth Employment Agreement is reasonable in temporal and geographic scope.

88.     By the actions described above, Defendant Thompson breached and continues to breach the express terms of the Wurth Employment Agreement that she signed as a condition of her employment with Wurth.

89.     By such actions, Defendant Thompson has caused and continues to cause Wurth immediate and irreparable harm for which Wurth has no adequate remedy at law.

90.     Defendant Thompson will continue such wrongful conduct unless enjoined.

**WHEREFORE**, WURTH respectfully requests that this Court:

A.     Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from owning, managing, operating, controlling, being employed by, participating in or being connected in any manner with the ownership, management, operation or control of any competing automotive parts business, the key machine, or key blank business, the industrial fastener and industrial maintenance products business, or any branch thereof (including Winzer and its affiliates) within Defendant's assigned territories;

B.     Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from soliciting or performing services for, or attempting to solicit or perform services for, any customer of Wurth within her assigned territories at any time within the twelve (12) months preceding the date of Defendant's separation;

C.     Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from soliciting or inducing or attempting to solicit or induce employees of Wurth to terminate their employment with Wurth, or cause employees to take any actions that might deprive Wurth of any customer or of any present or prospective business opportunity at any time within the twelve (12) months preceding the date of Defendant's separation;

D.     Enjoin Defendant from otherwise violating her Wurth Employment Agreement;

E.     Award damages against Defendant Thompson in an amount to be proved at trial;

F.     Award Wurth its costs and interest; and

G.     Grant such other and further relief as this Court deems equitable, just, and appropriate.

## COUNT II
## TORTIOUS INTERFERENCE WITH EXISTING AND PROSPECTIVE BUSINESS ADVANTAGE

91.     Wurth incorporates and re-alleges Paragraphs 1 through 83.

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

92.     Wurth had existing and prospective economic and contractual relationships with its customers and accounts.

93.     Defendant intended to harm Wurth by interfering with its existing and prospective economic and contractual relationships and preventing such relationships from continuing or occurring.

94.     Defendant engaged in this tortious conduct in the absence of privilege, justification or excuse.

95.     By tortiously interfering with Wurth's economic or contractual existing or prospective customers and accounts, Defendant has caused and will continue to cause Wurth actual, immediate and irreparable harm for which Wurth has no adequate remedy at law and on account of which it has suffered, and will continue to suffer, actual damages.

96.     By tortiously interfering with Wurth's existing or prospective economic and contractual relationships with its customers and accounts, Defendant has acted intentionally, willfully, maliciously and with reckless indifference to Wurth's rights.

97.     Defendant will continue such wrongful conduct unless enjoined.

**WHEREFORE**, WURTH respectfully requests that this Court:

A.      Enjoin Defendant, preliminarily during the pendency of this action and permanently thereafter, from interfering improperly with Wurth's economic and contractual relationships;

B.      Award damages against Defendant in an amount to be proved at trial;

C.    Award punitive damages against Defendant;

D.    Award Wurth its costs and interest; and

E.    Grant such other and further relief as this Court deems equitable, just, and proper.

**COUNT III**
**UNJUST ENRICHMENT**

98.    Wurth incorporates and re-alleges Paragraphs 1 through 83.

99.    Wurth entered into a valid and enforceable Employment Agreement with Defendant in exchange for compensation, and reasonably expected Defendant to honor the Agreement terms and conditions.

100.    Defendant had notice and knowledge that Wurth expected Defendant to perform and honor her agreed-upon obligations under her Employment Agreement.

101.    Defendant was enriched by her unlawful behavior when she accepted employment by Winzer and received the associated compensation and benefits, and continue to get enriched, in violation of her post-employment restrictive covenant.

102.    The enrichment of Defendant was at the expense of Wurth, particularly because, Winzer obtained significant profits due to the unlawful solicitation of Wurth's current and former customers by Defendant and in turn compensated Defendant, and upon information and belief, continues to do same.

103.    It is against equity and good conscience to permit Defendant to retain the windfall associated with Wurth and receive compensation along with other benefits

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

due to the successful unlawful solicitation of Wurth's customers for the benefit of themselves and Winzer.

104.  The benefits to Defendant, as described therein, were substantial and definitive.

105.  Wurth has been damaged as a direct and proximate result of Defendant's retention of benefits described herein.

106.  The retention of compensation and benefits by Defendant is unjust.

107.  Defendant will continue such wrongful conduct unless enjoined.

**WHEREFORE**, WURTH respectfully requests that this Court:

A.     Enjoin Defendant, preliminarily during the pendency of this action and permanently thereafter, from interfering improperly with Wurth's economic and contractual relationships;

B.     Award damages against Defendant in an amount to be proved at trial;

C.     Award punitive damages against Defendant;

D.     Award Wurth its costs and interest; and

E.     Grant such other and further relief as this Court deems equitable, just, and proper.

**COUNT IV**
**QUANTUM MERUIT**

108.  Wurth incorporates and re-alleges Paragraphs 1 through 83.

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

109.   Wurth contracted with Defendant to perform employment duties along with honoring post-termination employment duties in exchange for compensation, and reasonably expected performance and honoring of post-employment duties in return.

110.   Defendant impliedly and expressly promised to perform employment duties and to honor her post-employment duties to Wurth.

111.   Defendant has not fulfilled the agreed-upon post-employment duties pursuant to the agreed-upon obligations, all while retaining compensation and benefits from Wurth in addition to compensation and benefits from a prohibited direct competitor, Winzer.

112.   It would be unjust, unfair, and inequitable for Defendant to retain the benefit gained from their failure to fulfill and honor her agreed-upon obligations under the parties' Employment Agreement.

113.   Wurth has been damaged by Defendant's failure to fulfill and honor her post-employment obligations.

114.   Defendant will continue such wrongful conduct unless enjoined.

**WHEREFORE**, WURTH respectfully requests that this Court:

A.   Enjoin Defendant, preliminarily during the pendency of this action and permanently thereafter, from interfering improperly with Wurth's economic and contractual relationships;

B.   Award damages against Defendant in an amount to be proved at trial;

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

C.      Award punitive damages against Defendant;

D.      Award Wurth its costs and interest; and e)     Grant such other and further relief as this Court deems equitable, just, and proper.

## COUNT V
## REQUEST FOR INJUNCTION

115.    Wurth incorporates and re-alleges Paragraphs 1 through 83.

116.    Wurth's application for injunctive relief is authorized by Federal Rule of Civil Procedure 65.

117.    Defendant continues to work for a direct competitor, and continue to utilize Wurth's confidential and proprietary information and trade secrets to unlawfully solicit Wurth customers and sell to same.

118.    It is probable that Wurth will recover from Defendant after a trial on the merits because Defendant continues to work for a direct competitor and continue to utilize Wurth's confidential and proprietary information and trade secrets to unlawfully solicit Wurth customers and sell products to existing and former customers of Wurth and prospective customers.

119.    The harm that will result if the temporary injunction is not issued is irreparable because Defendant continues to work for a direct competitor and continue to use Wurth's confidential information and Wurth's trade secrets and continue to solicit and sell to Wurth's customers, which will cause irreparable and irreversible harm to the goodwill and reputation that Wurth has spent significant time and money establishing.

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131

120.    Wurth has no adequate remedy at law because Defendant refuses to cease employment with Winzer, and cease utilizing Wurth's trade secrets, goodwill, and materials, and for monetary gain.

**WHEREFORE**, WURTH respectfully requests that the court grant it the following injunctive relief:

A.    Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from owning, managing, operating, controlling, being employed by, participating in or being connected in any manner with the ownership, management, operation or control of any competing automotive parts business, the key machine, or key blank business, the industrial fastener and industrial maintenance products business, or any branch thereof (including Winzer and its affiliates) within the Defendant's assigned territories;

B.    Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from soliciting or performing services for, or attempting to solicit or perform services for, any customer of Wurth for which each respective Defendant assigned territories at any time within the twelve (12) months preceding the date of each respective Defendant's separation;

C.    Enjoin Defendant preliminarily during the pendency of this action and for twelve (12) months from the date of a final Order, from soliciting or inducing or attempting to solicit or induce employees of Wurth to terminate their employment with Wurth, or cause employees to take any actions that might deprive Wurth of any

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 • Miami, FL 33131

customer or of any present or prospective business opportunity at any time within the twelve (12) months preceding the date of each respective Defendant's separation;

        D.    Enjoin Defendant, preliminarily during the pendency of this action and permanently thereafter, from interfering improperly with Wurth's economic and contractual relationships; and

        E.    Enjoin Defendant, including without limitation any persons acting by, through, and for them, and anyone to whom she has already divulged Wurth's trade secrets, confidential or proprietary information, preliminarily during the pendency of this action and permanently thereafter, from endeavoring to learn, learning, retaining, disclosing, or using in any way Wurth's trade secrets, confidential or proprietary information.

        Dated:  March 25, 2022

                                Respectfully submitted,

                                *s/ Andrew R. Schindler*
                                FBN 124845
                                *aschindler@grsm.com*

                                **GORDON REES SCULLY MANSUKHANI LLP**
                                100 SE 2nd Street, Suite 3900
                                Miami, Florida 33131
                                Tel: (305) 428-5329
                                **Attorneys for Plaintiff**

## **VERIFICATION**

I, Aaron Brading, am the Chief Executive Officer ("CEO") of Wurth USA, Inc. ("Wurth"). I am authorized to make this Verification for and on behalf of Wurth.

I have read the foregoing Verified Complaint; the facts and matters set forth therein have been assembled from records of Wurth and were prepared with assistance of employees and representatives of Wurth, upon which I have relied in making this Verification. Based upon the matters which have been made known to me for purposes of making this Verification, I state that I am informed and believe that the matters stated in Wurth's complaint are true and correct. The grounds of my knowledge, information, and belief are derived from my position as CEO at Wurth, my personal involvement in the events underlying this litigation, and general investigation of the facts and circumstances described in the Verified Complaint, including, without limitation, my review of Wurth's records and conversations with Wurth employees, and Wurth representatives' conversations with Defendant.

I verify under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2022

**GORDON REES SCULLY MANSUKHANI LLP**
100 S.E. Second Street, Suite 3900 ▪ Miami, FL 33131